IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

BITUMINOUS CASUALTY CORPORATION　　　　　　　　　PLAINTIFF

VS.　　　　　　　　　　　　　CASE NO. 03-CV-1166

ZADECK ENERGY GROUP, INC. and
TRI-STATE OIL TOOL COMPANY, INC.　　　　　　　　DEFENDANTS

## **MEMORANDUM OPINION**

Before the Court are two pending motions for summary judgment. The first motion was filed on behalf of Plaintiff Bituminous Casualty Corporation ("Bituminous") and is styled as Plaintiff's Amended and Substituted Motion for Summary Judgment. (Doc. No. 36). Separate Defendant Tri-State Oil Tool Company, Inc. ("Tri-State") has filed a response to the motion. (Doc. No. 42).[1] Bituminous filed a reply to Tri-State's response. (Doc. No. 49). The second motion before the Court is a Motion for Summary Judgment filed on behalf of Separate Defendant Tri-State. (Doc. No. 57). Bituminous has filed a response to that motion. (Doc. No. 60). Both motions are ripe for consideration.

### BACKGROUND

Zadeck Energy Group, Inc. ("Zadeck") is in the business of owning and operating oil and gas wells, including a gas well know as the "Partnership Properties No. 1 Well" located in Columbia County, Arkansas. Zadeck acquired this particular well with the intention of

---

[1] Separate Defendant Zadeck also filed a response to Bituminous' amended motion for summary judgment. (Doc. No. 46). However, Zadeck has been dismissed from the lawsuit (Doc. No. 58), therefore, Zadeck's response will not be considered by the Court in deciding Bituminous' amended motion.

reworking and recompleting the well to include a second production zone at a depth in excess of 10,000 feet.

In order to bring the well into production, Zadeck hired Tri-State to preform the final step of "swabbing" the well. On March 29, 2003, Tri-State commenced the swabbing procedure on Zadeck's Partnership Properties No. 1 Well. During the lowering of the swab into the well, the swab and the swab line were lost down the tubing because the line was not attached to the rig's spool. The swab and swab line were retrieved from the well, but not without the well suffering damage which rendered it incapable of gas production. Prior to the incident, Bituminous had issued a policy of insurance to Tri-State, on which Tri-State made a claim. On June 6, 2003, Bituminous sent a written disclaimer of coverage to Tri-State.

On August 1, 2003, Zadeck brought suit in this Court against Tri-State (<u>Zadeck Energy Group v. Tri-State Oil Tool Company, Inc.</u>, Case No. 03-CV-1126) alleging that the damage to its Partnership Properties No. 1 Well was the result of the negligence and breach of contract by Tri-State. Tri-State filed its Answer on August 14, 2003. On August 21, 2003, Tri-State's attorney, Mike Kinard, wrote Bituminous tendering the defense of the <u>Zadeck v. Tri-State</u> lawsuit to it. On September 29, 2003, Mr. Kinard received a letter from Bituminous' counsel stating that Bituminous was declining tender of the defense based on its determination that there was no coverage or possibility of coverage for the claims against Tri-State. Thereafter, the defense of the <u>Zadeck v. Tri-State</u> lawsuit was handled by Mr. Kinard.

On October 23, 2003, Bituminous filed this declaratory judgment action against Tri-State and Zadeck pursuant to 28 U.S.C. § 2201. In this action, Bituminous is seeking a determination of the rights of the parties pursuant to the policy of insurance issued by it to Tri-State.

Bituminous stated in its Complaint that a real and justiciable controversy existed between the parties because Bituminous' position was that the insurance policy in question did not cover Zadeck's claims against Tri-State and it owed no duty to defend Tri-State in that suit. Mr. Kinard, on behalf of Tri-State, answered Bituminous' Complaint and filed a counterclaim asking for, *inter alia*, an award of $250,000 in consequential damages and its attorney fees in defending Bituminous' declaratory judgment action and the Zadeck v. Tri-State lawsuit. Thereafter, on July 30, 2004, Bituminous filed a Motion for Summary Judgment in this action.

On July 27, 2004, Zadeck filed a motion to amend its Complaint in the Zadeck v. Tri-State lawsuit. On August 13, 2004, the Court granted Zadeck's motion, and, on August 17, 2004, Zadeck amended its Complaint. In its Amended Complaint, Zadeck alleged that although some portion of the injury suffered by it occurred deep in the well bore, substantial injuries and damages took place elsewhere and on the surface. On August 18, 2004, the day after Zadeck amended its Complaint, Bituminous assumed the defense of the Zadeck v. Tri-State lawsuit subject to a reservation of rights. At this point, the defense of Tri-State in that lawsuit was assumed by Anderson, Murphy & Hopkins, and, on August 27, 2004, Randy Murphy of that firm was substituted for Mike Kinard as counsel for Tri-State.

On November 2, 2004, Tri-State filed a motion for leave to file a third-party complaint against Indiana Petroleum Contractors, Inc., the company from which Tri-State acquired the rig used in the swabbing of Zadeck's Partnership Properties No. 1 Well. On January 6, 2005, Tri-State filed third-party complaint against Indiana Petroleum, bringing it into the Zadeck v. Tri-State lawsuit.

On March 21, 2005, the Court ruled that Bituminous' Motion for Summary Judgment

was moot in that it was based upon Zadeck's original Complaint and ordered Bituminous to resubmit its summary judgment motion in light of Amended Complaint in Zadeck v. Tri-State. On May 2, 2005, Bituminous filed the Amended and Substituted Motion for Summary Judgment now pending before the Court. In its amended motion, Bituminous contends that the insurance policy in question does not cover the claims stated in Zadeck's Amended Complaint. It also contends that it owes no duty to defend Tri-State in that lawsuit even though it had assumed Tri-State's defense on August 18, 2004.

In September 2005, Zadeck's claims against Tri-State and Indiana Petroleum were settled. In settlement of those claims, Bituminous paid $85,000 to Zadeck on behalf of Tri-State. The claims made by Zadeck against Tri-State have been dismissed with prejudice.

On October 26, 2005, Tri-State filed a Motion for Summary Judgment in this case asking the Court to order Bituminous to pay Tri-State's attorney fees in both the declaratory judgment action and the Zadeck v. Tri-State lawsuit. Bituminous admits that the sole issue pending before the Court is whether Tri-State can recover its attorney fees in defending the instant case for declaratory judgment and the legal fees it incurred in defending the underlying Zadeck v. Tri-State lawsuit. However, before the Court can address the issue of attorney fees, the question of coverage and the duty to defend in Bituminous' amended motion for summary judgment must first be answered.

## STANDARD OF REVIEW

The standard of review for summary judgment is well established. Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank,* 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of LeSueur,* 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Krenik v. County of LeSueur,* 47 F.3d at 957.

## DISCUSSION

Bituminous has filed this declaratory judgment action pursuant to 28 U.S.C. § 2201. Section 2201 states that "[i]n a case of actual controversy within its jurisdiction . . . , any court of the United States, upon filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Bituminous asks the Court to determine the rights of the parties pursuant to the policy of insurance issued by it to Tri-State. If the Court determines that coverage exists under the policy in question, Tri-State is entitled to the attorney fees it has incurred in defending the declaratory judgment action now pending before the Court. *See* Ark. Code Ann. § 23-79-209. Therefore, in order to determine if Tri-State is entitled to recover these attorney fees the Court must first determine if coverage exists under the policy.

In determining coverage under an insurance policy, the Court first turns to the policy itself. If the terms of the policy are clear and unambiguous, the policy language controls; and absent statutory strictures to the contrary, exclusionary clauses are generally enforced according to their terms. *State Automobile Ins. Co. v. Lawrence,* 358 F.3d 982 (8th Cir. 2004)(*quoting Noland v. Farmers Insurance Co.,* 892 Ark. 449, 452, 892 S.W.2d 271 (1995)). Whether the language of a policy is ambiguous is a question of law to be resolved by the Court. *Norris v. State Farm Fire & Cas. Co.,* 341 Ark. 360, 16 S.W.3d 242 (2000). The policy language is considered ambiguous if there is doubt or uncertainty as to its meaning and it is susceptible to more than one reasonable interpretation. *Nicholas v. Farmers Ins. Co.,* 83 Ark.App. 324, 329 128 S.W.3d 1 (Ark.App. 2003). In reviewing the policy in this case, the Court finds that its language is unambiguous; therefore, it is the duty of the Court to give effect to the plain language of the policy without resorting to rules of construction. *Castaneda v. Progressive Classic Ins. Co.,* 83 Ark.App. 267, 273, 125 S.W.3d 835 (Ark.App. 2003).

The insurance policy in question contains an endorsement titled "Exclusion – Underground Resources and Equipment." This endorsement provides that this "insurance does not apply to 'Property Damage' included within the 'underground resources and equipment hazard'." The "underground resources and equipment hazard" is defined to include "property damage" to any of the following:

A. Oil, gas, water, or other minerals substances which have not been reduced to physical possession above the surface of the earth or above the surface of any body of water;

B. Any well, hole, formation, strata or area in or through which exploration for or production of any substance is carried on: or

    C. Any casing, pipe, bit, tool, pump, or other drilling or well servicing machinery or equipment located beneath the surface of the earth in any such well or hole beneath the surface of any body of water.

The allegations in Zadeck's original Complaint sought damages resulting from Tri-State's swabbing equipment coming loose underground in Zadeck's Partnership Properties No. 1 Well and falling down the well, thus, damaging the well. These alleged damages clearly fall within the policy's "underground resources and equipment hazard" exclusion.

In its Amended Complaint, Zadeck also alleges that "although some portion of the injury to the Plaintiff occurred deep in the well bore of the 'Partnership Properties #1 Well', substantial injuries and damages suffered by Plaintiff took place elsewhere and on the surface." Even though Zadeck does not specify what these alleged surface damages are, Tri-State argues that these additional allegations create a question of fact for the jury as to whether the damages in question are outside the policy's exclusions. However, Tri-State has not produced any evidence showing that anything on the surface was damaged by its swabbing equipment being lost down Zadeck's Partnership Properties No. 1 Well. In order for Tri-State to avoid summary judgment, it must set forth specific facts showing that there is a genuine issue of fact for trial. Tri-State has not done this. There is no evidence before the Court that indicates that any of the damage claimed by Zadeck was above ground and outside the "underground resources and equipment hazard" exclusion. The mere allegation of surface damage is not enough to defeat summary judgment on the question of coverage. Bituminous is entitled to judgment as a matter of law on this issue. Because the Court finds that Bituminous is entitled to summary judgment on the issue of coverage, Tri-State is not entitled to its attorney fees for defending the action under Ark. Code Ann. § 23-79-209.

Tri-State argues that Bituminous has waived the issue of coverage pending in the declaratory judgment action because it settled Zadeck's claim against Tri-State. However, Bituminous settled that claim under a reservation of rights. Bituminous has never abandoned its claims that no coverage existed under the policy issued by it to Tri-State or that it has no duty to defend Tri-State in the Zadeck v. Tri-State lawsuit. Therefore, since Bituminous has not voluntary surrendered these rights, there is no waiver of them on its part.

Tri-State also argues that this case is analogous to the case of *Hicks v. Allstate Ins. Co.* and it is entitled to attorney fees based upon the reasoning in that case. *See Hicks v. Allstate Ins. Co.,* 304 Ark. 101, 799 S.W.2d 809 (1990). However, in the *Hicks* case, Allstate settled the underlying lawsuit and its declaratory judgment, dismissing the declaratory judgment with prejudice. The Arkansas Supreme Court determined that such a dismissal with prejudice was a final adjudication of the declaratory judgment action, therefore, attorney fees were appropriate under Ark. Code Ann. § 23-70-209. That is not the case here. Bituminous settled the underlying lawsuit between Zadeck and Tri-State but the settlement of that case was not a final adjudication here and it is not conclusive of the rights of the parties now before the Court. The declaratory judgment action on the issue of coverage is not settled until now with the Court's granting of Bituminous' summary judgment on that issue, and, because the declaratory judgment is in favor of Bituminous, Tri-State is not entitled to its attorney fees in defending this action. Therefore, Tri-State's Motion for Summary Judgment on the issue of attorney fees in connection with the declaratory judgment action should be denied.

The second issue pending in this declaratory judgment action is the question of Bituminous' duty to defend Tri-State in the underlying suit of Zadeck v. Tri-State, and, whether

8

Bituminous should now be required to pay the attorney fees of Tri-State's independent counsel in that suit. The Court will first address Bituminous' duty to defend.

The general rule in Arkansas is that an insurer's duty to defend is determined from the pleadings. *Mattson v. St. Paul Title Company of the South,* 227 Ark. 290, 292, 641 S.W.2d 16 (1982)(citing *Commercial Union Insurance Co. of America v. Henshall,* 262 Ark. 117, 553 S.W.2d 274 (1977)). This duty to defend is broader that the duty to pay damages. *Henshall,* 262 Ark. at 121 (1977). If there is a possibility that the injury or damages may fall within the policy coverage, the duty to defend arises. *See Home Indemnity Co. v. City of Marianna,* 291 Ark. 610, 727 S.W.2d 375 (1987). Conversely, where there is no possibility that the damage alleged in the complaint may fall within the policy coverage, there would be no duty to defend. *See Murphy Oil USA, Inc. v. Unigard Security Insurance Company,* 347 Ark. 167, 61 S.W.3d 807 (2001).

Here, the original Complaint in Zadeck v. Tri-State alleged damages resulting from Tri-State's swabbing equipment coming loose underground in Zadeck's Partnership Properties No. 1 Well and falling down the well, thus, damaging the well and rendering it incapable of production. Looking at this Complaint, it is apparent that the damage that Zadeck alleges to its well is underground. There is no possibility that these damages fall within the policy's coverage because they are clearly within the policy's "underground resources and equipment hazard" exclusion. Under the original Complaint, Bituminous did not have a duty to defend Tri-State against Zadeck's claims. Therefore, it is not responsible for any attorney fees incurred by Tri-State under the original Complaint.

On August 17, 2004, Zadeck filed an Amended Complaint in its suit against Tri-State. In its Amended Complaint, Zadeck also alleged that "although some portion of the injury to the

9

Plaintiff occurred deep in the well bore of the 'Partnership Properties #1 Well,' substantial injuries and damages suffered by Plaintiff took place elsewhere and on the surface." Looking at this Complaint, Zadeck alleges surface damage which could be outside the policy's exclusion. If Zadeck proves such damage, Bituminous would be liable under the policy for this surface damage. There is a possibility that some of the allegations contained in the Amended Complaint could fall within the policy's coverage. Once Zadeck's Amended Complaint was filed on August 17, 2004, Bituminous had a duty to defend Tri-State. Therefore, Bituminous' Motion for Summary Judgment on the question of its duty to defend under the insurance policy in question should be denied.

Bituminous fulfilled its duty to defend by assuming the defense of Tri-State subject to a reservation of rights. Once this happened, Randy Murphy, who was substituted for Tri-State's independent counsel, defended Tri-State in the lawsuit. Tri-States alleges that even though Bituminous provided independent counsel to defend it in the Zadeck v. Tri-State lawsuit, it was entitled to retain counsel of its own choice and Bituminous should be required to reimburse Tri-State for that counsel. Tri-State contends that its own counsel was necessary because a conflict of interest was created by the defense being provided by Bituminous under a reservation of rights. It is true that when there is a duty to defend under an insurance policy and there is a conflict of interest between the insurer's interest and that of the insured, the insurer must either provide an independent attorney to represent the insured or pay the costs incurred by the insured in hiring counsel of its own choice. *U.S. Fidelity and Guaranty Co. v. Louis A. Roser Co., Inc.,* 585 F.2d 932, 939 (8th Cir. 1978)(citing *All-Star Ins. Corp. V. Steel Bar, Inc.*, 324 F.Supp 160, 165 (N.D. Ind. 1971); *Executive Aviation, Inc. v. National Ins. Underwriters*, 16 Cal.App.3d

799, 94 Cal.Rptr. 347, 354 (1971); *Employers' Fire Ins. Co. v. Beals*, 103 R.I. 623, 240 A.2d 397, 404 (1968); *Prashker v. United States Guarantee Co.*, 1 N.Y.2d 584, 593, 154 N.Y.S.2d 910, 917, 136 N.E.2d 871, 876 (1956)). But an insurance company is not required to do both.

In this case, once the Amended Complaint was filed and Bituminous had a duty to defend Tri-State, it hired Randy Murphy to represent Tri-State in the litigation with Zadeck. Upon entering the lawsuit, Mr. Murphy brought Indiana Petroleum into the litigation by filing a third-party complaint against it. He entered into settlement negotiations with Zadeck on behalf of Tri-State and eventually settled Zadeck's claim against Tri-State for $85,000, which Bituminous paid. There is no indication that the counsel provided by Bituminous did not vigorously defend Tri-State in its lawsuit with Zadeck or act contrary to Tri-State's best interests. Under its duty to defend, Bituminous was required to provide independent counsel to Tri-State or pay the costs incurred by it in hiring its own counsel. Bituminous fulfilled this duty by hiring independent counsel in the form of Randy Murphy. It is not required to provide such independent counsel and pay for Tri-State's own attorney. Therefore, Tri-State's Motion for Summary Judgment on the issue of reimbursement of the fees of its own attorney should be denied.

The only remaining matter before the Court is Tri-State's request for consequential damages. Tri-State requests damages in the amount of $250,000 based upon Bituminous' refusal to pay the claims under the policy in good faith and in a timely manner. In light of the fact that the Court has found that there is no coverage under the insurance policy in question, Tri-State is not entitled to such consequential damages. Therefore, Tri-State's Counterclaim should be dismissed as a matter of law.

CONCLUSION

For the reasons discussed herein above, the Court finds that Bituminous Casualty Corporation's Amended and Substituted Motion for Summary Judgment should be and hereby is **granted** in part and **denied** in part. The Motion for Summary Judgment filed by Tri-State Oil Tool Company should be and hereby is **denied.** The Counterclaim filed by Tri-State should be and hereby is **dismissed.** An order of even date shall be issued.

IT IS SO ORDERED, this 14th day of December, 2005.

    /s/Harry F. Barnes
Hon. Harry F. Barnes
United States District Judge